UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHELLE MILHOMME,
    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,
    *Defendant*.

No. 3:17-cv-01369 (JAM)

**RULING ON CROSS MOTIONS TO REMAND AND AFFIRM DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Plaintiff Michelle Milhomme asserts that she is disabled and unable to work due to several medical conditions. She filed this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant Commissioner of Social Security, who denied plaintiff's application for social security disability insurance benefits. Plaintiff has filed a motion to reverse the decision of the Commissioner (Doc. #18), and defendant has filed a motion to affirm the decision of the Commissioner (Doc. #19). For the reasons set forth below, I will grant the motion to remand and deny the motion to affirm the decision of the Commissioner.

### BACKGROUND

The Court refers to the transcripts filed by the Commissioner. *See* Doc. #11-1 through Doc. #11-14. Plaintiff filed an application for social security disability income on March 20, 2014, alleging a disability beginning on January 31, 2014. Plaintiff's claim was initially denied on May 13, 2014 and denied again upon reconsideration on September 25, 2014. She then filed a written request for a hearing on October 10, 2014.

Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Ronald J. Thomas on November 9, 2015. Plaintiff was represented by counsel. On

February 26, 2016, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act. *See* Doc. #11-3 at 75–91. The Appeals Council affirmed the decision of the ALJ on June 13, 2017. Plaintiff then filed this federal action on August 11, 2017.

To qualify as disabled, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with her physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether she qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work

experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that plaintiff last met the insured status requirement of the Social Security Act on December 31, 2016. Doc. #11-3 at 78. Plaintiff had not engaged in substantial gainful activity since February 1, 2014. *Ibid.* At Step Two, the ALJ found that plaintiff suffered from the following severe impairments: "history of lumbar fusion in 2010, cervical spondylosis, nonsevere knee condition, bipolar disorder, anxiety disorder, history of gastric bypass surgery and prior obesity (improved), and nonsevere incisional hernia repair surgery (recent)." *Ibid.*

At Step Three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 81.

3

At Step Four, the ALJ found that, through the date of last insured, plaintiff had "the residual functional capacity (RFC) to perform sedentary work with the further limitation of only occasionally bending, balancing, climbing, twisting, crawling, squatting and kneeling. In addition, she can perform occasional interaction with co-workers, the public and supervisors, and she can sustain simple, routine, repetitive tasks which do not require working closely with the public or teamwork." *Id.* at 83. The ALJ also concluded at Step Four that plaintiff was unable to perform any of her past relevant work. *Id.* at 89.

At Step Five, after considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that, through the date of last insured, there are jobs that exist in significant numbers in the national economy that plaintiff could perform. *Ibid.* The only such job identified by the ALJ was addresser. *Id.* at 90. The ALJ found that there are 110 such jobs in Connecticut and 6,000 jobs nationally. *Ibid.* The ALJ ultimately held that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 91.

### *Weight of Medical Opinion and the Treating Physician Rule*

Plaintiff argues that the ALJ erred in formulating the RFC because he accepted parts of the medical source statement of plaintiff's treating physician, Dr. Cooper, but rejected other parts without explanation. In particular, the ALJ accepted Dr. Cooper's conclusion that plaintiff could sit for three hours at one time without interruption and eight hours total in a work day, but ignored his finding that plaintiff could only walk or stand for 10-15 minutes at one time without interruption and less than an hour total in a work day. *See* Doc. #11-10 at 248. The ALJ also ignored Dr. Cooper's view that plaintiff could not engage in any pushing or pulling. *Id.* at 249.

The treating physician rule requires that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2). Even if the treating physician's opinion is not given controlling weight, the ALJ must consider a number of factors to determine the proper weight to assign, including "the [l]ength of the treatment relationship and the frequency of examination; the [n]ature and extent of the treatment relationship; the relevant evidence . . ., particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess*, 537 F.3d at 129 (quotation marks omitted); *see generally* 20 C.F.R. § 404.1527(c). After considering these factors, the ALJ is then required to "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion. . . . Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129–30.

The ALJ cited Dr. Cooper's November 2014 medical source statement to support the proposition that plaintiff could sit for three hours at a time with interruption and eight hours in the workday. Doc. #11-3 at 86. But the ALJ ignored his conclusions regarding plaintiff's limited ability to stand/walk and push/pull. Although the ALJ apparently considered the medical source statement credible, he nonetheless ignored without apparent reason part of Dr. Cooper's statement. The ALJ did not acknowledge Dr. Cooper's opinion regarding the standing/walking or pulling/pushing limitations or explain why his opinion was not given controlling weight.

This omission is not harmless because standing/walking limitations may have a significant impact on a claimant's ability to perform sedentary work. As to "Standing and Walking," the Social Security regulations regarding sedentary work provide as follows:

5

> [T]he full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

See SSR 96-9P, 1996 WL 374185, at *6. Accordingly, any limitation in plaintiff's ability to walk/sit may significantly erode the occupational base and consequently her ability to perform sedentary work.

The ALJ's failure to consider Dr. Cooper's opinion regarding plaintiff's walking/standing limitations is especially significant in light of the fact that the ALJ concluded that plaintiff could perform only the job of addresser. The ALJ further concluded, based on the vocational expert's testimony, that there are 110 such jobs in Connecticut and 6,000 jobs nationally. Doc. #11-3 at 91. Although the ALJ concluded that this constituted "significant numbers" within the national economy, these numbers are right on the margin of what courts in this Circuit deem "significant." Several courts have held that occupations with 4,000-5,000 positions nationally are not considered "significant," while numbers upwards of 9,000 are considered significant. *See Hanson v. Comm'r of Soc. Sec.*, 2016 WL 3960486, at *13 (N.D.N.Y.) (citing cases), *report and recommendation adopted sub nom. Hanson v. Colvin*, 2016 WL 3951150 (N.D.N.Y. 2016). In addition, the regional number of 110 jobs is also on the fringe of what courts deem significant. *See Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (holding that 200 regional positions and 6,000 national positions were sufficient); *Pendley v. Colvin*, 2016 WL 1618156, at *12 (D. Or.) ("7000 jobs nationally and 100 jobs locally is not a significant number"), *report and recommendation adopted*, 2016 WL 1588396 (D. Or. 2016); *Koutrakos v. Colvin*, 2015 WL 1190100, at *22 (D. Conn. 2015) (questioning whether 85 positions in Connecticut would be

6

sufficient). Had the ALJ complied with the treating physician rule and considered plaintiff's standing/walking limitation, it is reasonably likely that such limitations would prevent plaintiff from performing this one job.

Accordingly, I agree with the plaintiff that the ALJ failed to comply with the treating physician rule by ignoring significant portions of Dr. Cooper's medical source statement. On remand, the ALJ should also be sure to address the other concerns raised by plaintiff in her briefing in this case.

## CONCLUSION

Plaintiff's motion to reverse or remand (Doc. #18) is GRANTED. The Commissioner's motion to affirm the decision of the Commissioner (Doc. #19) is DENIED. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

It is so ordered.

Dated at New Haven this 24th day of September 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge